KCB:AP/ML

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | <u>A F F I D A V I T   A N D</u> <u>C O M P L A I N T   I N   S U P P O R T</u> <u>O F   A N   A P P L I C A T I O N   F O R</u> <u>A N   A R R E S T   W A R R A N T</u> |
| - against - | |
| SHAMEL MYHAND, | Case No. 23-MJ-773 |
| Defendant. | (18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 1951(a)) |

- - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

   MICHAEL SAVONA, being duly sworn, deposes and states that he is a

Special Agent with the Federal Bureau of Investigation duly appointed according to law and

acting as such.

   On or about October 7, 2020, within the Eastern District of New York, the

defendant SHAMEL MYHAND, together with others, did knowingly and intentionally

obstruct, delay and affect commerce, and the movement of articles and commodities in

commerce, by robbery, to wit: the robbery of U.S. currency from patrons of a gambling

establishment located at 181 Hegeman Avenue in Brooklyn, New York.

   (Title 18, United States Code, Sections 1951(a) and 2)

   On or about October 7, 2020, within the Eastern District of New York, the

defendant SHAMEL MYHAND, together with others, did knowingly and intentionally use

and carry one or more firearms during and in relation to a crime of violence, to wit: a

violation of Title 18, United States Code, Section 1951(a), and did knowingly and

intentionally possess such firearms in furtherance of said crime of violence, one or more of which firearms were brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2015.   I am currently assigned to the New York Metro Safe Streets Gang Task Force, where I investigate gangs, narcotics trafficking, firearms trafficking, robbery, kidnapping and other offenses.   These investigations are conducted both overtly and covertly.   Through my training, education and experience, I have become familiar with the manner in which narcotics distribution, robberies, firearms trafficking and other schemes are carried out, and the efforts of persons involved in such activity to avoid detection by law enforcement.   I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file and from reports of other law enforcement officers involved in the investigation.   Where I describe the statements of others, I am doing so only in sum and substance and in part.

2.      On or about October 7, 2020, a shooting took place inside 181 Hegeman Avenue in Brooklyn, New York (the "Shooting Location"), a known gambling location in the 73rd Precinct.   I have observed video surveillance leading up to and

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

following the shooting.   The video shows that at some point three males—"Shooter-1,"

"Shooter-2" and the defendant SHAMEL MYHAND—enter the Shooting Location, where a

robbery took place.

        3.    Cell site location data, corroborated by other records, show that a co-

conspirator (the "Co-Conspirator") drove Shooter-1 and Shooter-2 from New Jersey into

Brooklyn before the robbery.   After arriving in Brooklyn, Shooter-1, Shooter-2 and the Co-

Conspirator met up with the defendant SHAMEL MYHAND.   Telephone records for a

phone number belonging to MYHAND (the "MYHAND Number") revealed

communications between MYHAND and the Co-Conspirator in the lead-up to their meeting

in Brooklyn on October 7, 2020.

        4.    In the moments before Shooter-1, Shooter-2 and the defendant

SHAMEL MYHAND entered the Shooting Location, and after MYHAND met with the co-

conspirators, surveillance video captured Shooter-1, Shooter-2 and MYHAND waiting next

to the Co-Conspirator's car around the corner from the Shooting Location.   Surveillance

video then captured Shooter-1, Shooter-2 and MYHAND walking away from the Co-

Conspirator's car, where the Co-Conspirator waited, and towards the Shooting Location.

Separate surveillance video from the entry of the Shooting Location captured Shooter-1,

Shooter-2 and MYHAND entering the Shooting Location.   After entering the Shooting

Location, Shooter-1, Shooter-2 and MYHAND displayed weapons and stole U.S. currency

from the Shooting Location and individuals therein.

        5.    In the surveillance video from the Shooting Location, and during the

course of the robbery, the defendant SHAMEL MYHAND can be seen holding a firearm and

fighting with the bouncer of the Shooting Location ("Victim-1"), whose identity is known to

me.   Shooter-1 can be seen firing a shot at Victim-1's back, where one discharged 9mm cartridge casing was later recovered by responding officers.   After that gunshot, Shooter-1 fled the Shooting Location.   As Shooter-1 fired at Victim-1, Shooter-2 can be seen on the video firing multiple gunshots in a backyard area where a discharged .380 caliber cartridge casing was later recovered.   Shooter-2 can then be seen firing at Victim-1's chest where a discharged .380 caliber cartridge casing was later recovered and also where MYHAND was fighting with Victim-1.   A third .380 caliber cartridge casing was recovered elsewhere in the Shooting Location.

6.   After the gunshot, Shooter-2 fled the Shooting Location.   MYHAND also fled the Shooting Location shortly thereafter.   Shooter-1, Shooter-2 and the Co-Conspirator fled the Shooting Location in the Co-Conspirator's awaiting car without MYHAND.   Telephone records for the MYHAND Number revealed communications between MYHAND and the Co-Conspirator after the robbery.

7.   Victim-1 was pronounced dead that night at a local hospital.   An autopsy conducted on Victim-1 revealed the cause of death was from injuries sustained from two gunshot wounds.   In addition, Victims-2, -3 and -4, who were patrons at the Shooting Location and whose identities are known to me, were also removed from the scene with gunshot wounds sustained in the general area where Shooter-2 can be seen on video firing his weapon.   Eyewitnesses present at the Shooting Location at the time informed law enforcement that while gambling, multiple armed individuals entered the location, displayed weapons and stole U.S. currency from the Shooting Location and individuals therein.

8.   Based on my review of the surveillance video from the Shooting Location, as well as my familiarity with the defendant SHAMEL MYHAND, including

meeting him in person and reviewing a known photograph of him, I believe that the perpetrator captured on the surveillance video brandishing a firearm and fighting with Victim-1, as described herein, is MYHAND, given the similarity in appearance.

9.     On or about August 29, 2023, the defendant SHAMEL MYHAND received Miranda warnings, waived those rights and agreed to speak with law enforcement officers.  MYHAND informed officers, in sum and substance and in part, that he agreed to participate in a robbery at the Shooting Location and that he used a firearm in doing so. MYHAND also identified himself from a surveillance still entering the Shooting Location soon before the shooting.

WHEREFORE, your deponent respectfully requests an arrest warrant for the defendant SHAMEL MYHAND, so that he may be dealt with according to law.

MICHAEL SAVONA
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone this
30ᵗʰ day of August, 2023

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK